IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRIN WHITE, :
          Plaintiff :
    v. : Case No. 3:06-cv-244-KRG-KAP
GERALD ROZUM, ROBERT SNYDER, :
ALLEN JOSEPH, STEVEN GATES, :
CAPTAIN PAPUGA, BILL MAILMAN, :
LIEUTENANT MEYERS, and MELISSA :
HUGHES, :
          Defendants :

### Report and Recommendation

#### Recommendation

Defendants and plaintiff have filed cross motions for summary judgment on the remaining claim, whether defendants retaliated against plaintiff for testifying in an internal investigation against a Pennsylvania Department of Corrections employee by placing him in administrative custody. Defendants' motion, docket no. 32, should be granted; plaintiff's motion, docket no. 38, should be denied, and this matter dismissed.

#### Report

Plaintiff was incarcerated at S.C.I. Somerset in 2005 after being recommitted by the Pennsylvania Board of Probation and Parole to serve time for a parole violation while he was on parole from a 10-20 year sentence originally imposed in 1989 by the Court of Common Pleas of Philadelphia County. Plaintiff arrived in Somerset in October 2004, having been transferred from S.C.I. Huntingdon after being accused there of belonging to a security threat group and planning an assault on another inmate. While plaintiff was at Somerset in 2005, he suspected or became aware of an extramarital affair between an inmate and a Pennsylvania Department of Corrections employee, Lori Prinkey. Prinkey's

husband, apparently suspecting or becoming aware of the same, allegedly murdered the inmate at some point in October 2005. On April 24, 2006, plaintiff testified in the resulting internal investigation, which led to the firing of Prinkey. Plaintiff alleges that friends of Prinkey began harassing him.

In 2005, plaintiff had filed a civil suit in the Court of Common Pleas of Somerset County against a Captain Weaver and Melissa Hughes, Pennsylvania Department of Corrections employees at Somerset. Melissa Hughes is allegedly a long time friend of Prinkey. Because a bank was foreclosing on a piece of property owned by Hughes and her husband and the bringdown disclosed plaintiff's civil suit, plaintiff was a person with a potential claim against Hughes. At some point in May or June 2006, the attorney for the bank sent notice of the foreclosure action to plaintiff, as he was required to do under state law. Corrections personnel (Rita Walker) heard from an inmate that plaintiff was claiming that he had Hughes' address (and it appears that at first they believed that plaintiff had Hughes' home address) and moved plaintiff into administrative custody on June 16, 2006, pending an investigation into how this had happened. Although the resulting investigation did not result in any charge of misconduct against plaintiff, prison personnel determined that plaintiff should be transferred. Plaintiff was transferred on July 25, 2006, to S.C.I. Smithfield, after spending about a month in administrative custody.

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment when there is no genuine issue of material

fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). (emphasis in original). A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the substantive law applicable to the case. 477 U.S. at 248. An issue of material fact is "genuine" if the evidence is such that a reasonable factfinder could find in favor of the non-moving party. 477 U.S. at 257.

The Court of Appeals held, in Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003), that the elements of a retaliation claim are: (1) that the plaintiff took some action itself protected by the constitution; (2) that the defendant took adverse action against the plaintiff sufficient to deter a person of ordinary firmness from persisting in his conduct; and (3) that there was a causal connection between the plaintiff's protected conduct and the adverse action. If plaintiff proves a prima facie case, defendants may still prove the affirmative defense that they "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d 330, 334 (3d Cir.2001). The record of this matter, even construed as favorably to the inmate as possible, does not present a genuine issue of fact.

Defendants concede that plaintiff's testifying is protected activity, and there is likewise no dispute that being placed in administrative custody is adverse activity: as plaintiff observes, administrative custody differs only in name from disciplinary custody, with 23 hours of confinement to a cell and

3

removal of amenities available in general population. Plaintiff offers no evidence of the rest of the second element of a retaliation claim, namely, that the conditions in the RHU were not only adverse but so onerous that it would chill or deter a reasonable inmate from engaging in the protected activity. Plaintiff himself is quite undeterred, and having been in administrative custody five times in the three years before the events of this lawsuit, plaintiff was almost certainly not even mildly chilled by the prospect of such status. I pass over this point, however, because defendants defend on the affirmative basis that the placement of plaintiff in segregation was justified by the pending investigation into how plaintiff obtained Hughes' address.

There is no question that placing an inmate into segregation during a legitimate investigation is a valid penological action, and plaintiff does not contest the existence of an investigation. Plaintiff offers three types of evidence to counter the defendants' affirmative defense, by attempting to show that the investigation was pretextual. First, plaintiff offers the circumstantial evidence that his segregation followed closely upon his testimony. This tack is unconvincing because the temporal proximity of the investigation to plaintiff's obtaining of Hughes' address is far closer. Plaintiff also does not point to, much less produce, evidence that similar incidents involving inmates not engaged in protected activity did not result in investigations.

Second, plaintiff points out that he did not have Hughes' home address and that the circumstances of his obtaining the

4

address of the Hugheses' property were quickly apparent to defendants. Plaintiff's argument attacks a straw man, because the question here is not whether the defendants conducted the optimum investigation or should have discovered that there was no threat to Hughes in less than the month that plaintiff spent in the RHU, it is whether they properly conducted any investigation at all. Once it is admitted that defendants did have a legitimate reason for placing plaintiff in the RHU, the pace and thoroughness (or even the competency) of the investigation is not legally material. See e.g. Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997)(inmate suspected of assault and rape of corrections officer who was placed in administrative segregation for 15 months without any hearing deprived of no interest protected by Due Process Clause).

Third, plaintiff offers his and other inmates' affidavits that Prinkey and Hughes harassed plaintiff. docket no. 37-2. Even casual examination of the affidavits, however reveals that like the Reiner and Lapelosa affidavits they are irrelevant because they discuss alleged harassment in 2005 before plaintiff would have had occasion to testify, or like the Douglas affidavit they indicate that the motive for any action against plaintiff was **not** his testimony. Plaintiff also cites the Williamson letter of September 13, 2006 which appears to state incorrectly that the reason for the transfer is "assaultive behavior," but as discussed in my previous Report and Recommendation the transfer is not at issue, and the letter has no relevance to the decision to place plaintiff in administrative custody. (I note that, if the transfer

5

were at issue, there is no evidence that the transfer from Somerset to Smithfield was even an adverse action.)  Judgment should be entered for all defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.  Since plaintiff is according to his change of address no longer an inmate and therefore no longer subject to the Prison Litigation Reform Act, he shall within the same time period pay the balance of the filing fee if he wishes to continue this action.

DATE: 20 September 2007

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. mail to:

>    Darrin White
>    P.O. Box 99482
>    Pittsburgh, PA 15212